IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-197-BO

DAVID A. DONNELLY, JR., EXECUTOR )
OF THE ESTATE OF MARGIE D.                     )
EATON,                                                        )
           Plaintiff,                                 )
                                       )
              v.                                          )          O R D E R
                                       )
SSC CLAYTON OPERATING                    )
COMPANY, LLC,                                        )
           Defendant.                             )

This cause comes before the Court on defendant's second motion to dismiss pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure. A hearing was held on the matter before

the undersigned on October 18, 2013, at Raleigh, North Carolina. For the reasons discussed

below, defendant's motion is denied.

## BACKGROUND

Plaintiff filed this action in Johnston County, North Carolina, alleging a claim for

negligence under res ipsa loquitur. Defendant subsequently removed the action to this Court on

the basis of this Court's diversity jurisdiction. 28 U.S.C. §§ 1441;1332. Defendant moved to

dismiss plaintiff's complaint, and plaintiff timely filed an amended complaint. Defendant now

seeks the dismissal of plaintiff's amended complaint.

Plaintiff is the executor of the estate of Ms. Margie D. Eaton, who was at one time a

resident of the Brian Center Health & Retirement/Clayton, a nursing home licensed by the State of

North Carolina that is owned and operated by defendant. Ms. Eaton suffered from the effects of a

stroke, dementia, hemiplegia, aphasia, and dysphagia, required a feeding tube, and had a below-

knee amputation of her right leg. The complaint alleges that Ms. Eaton was bed-bound and totally dependent on Brian Center staff for all activities of daily living, including moving. Ms. Eaton's care plan was updated on February 25, 2010, to note that she was at risk for falls and required the assistance of at least two staff members for transfers. On May 25, 2010, an evaluation placed Ms. Eaton in the highest level of lift and transfer precautions, noting that the caregiver must perform 100% of the task. Ms. Eaton's chart documents falls occurring on February 5, 2010, April 11, 2010, and July 12, 2010, while Ms. Eaton was being turned or bathed in her bed. On July 13, 2010, Ms. Eaton's care plan was again updated to require that her bed remain in a low position, that floor mats be placed on both sides of the bed, and that any fall-related injuries must be reported to a physician.

On July 22, 2010, Brian Center staff allegedly noticed that Ms. Eaton was moaning more than usual. Inspection revealed that her left knee was swollen and bruising appeared on the back of her knee. A mobile x-ray confirmed that Ms. Eaton had a fractured left femur. The following day, at the insistence of plaintiff, Ms. Eaton was transferred to the local hospital's emergency department. Ms. Eaton was ultimately transferred to WakeMed in Raleigh where surgery was performed on her fractured femur.

Plaintiff alleges there are no notations in Ms. Eaton's chart regarding a fall or any other injury between July 12, 2010, and July 22, 2010. Accordingly, plaintiff has pled his claim under the doctrine of res ipsa loquitur.

DISCUSSION

I.    LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Attain*, 478

2

U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facial plausibility means that the facts plead "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be dismissed." *Twombly*, 550 U.S. at 570.

II.      PLAINTIFF HAS STATED A CLAIM FOR ORDINARY NEGLIGENCE

The Court does not find that, as defendant contends, plaintiff has brought an action for medical malpractice, but rather that plaintiff has brought an action for ordinary negligence. North Carolina defines a medical malpractice action as a "civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2). It is undisputed that a nursing home is a health care provider as that term is defined by North Carolina law. N.C. Gen Stat. § 90-21.11(1). When considering whether a service is "professional" within the context of medical, dental, or other health care, it is those "medical decision[s] requiring clinical judgment and intellectual skill" that are deemed to be professional services. *Sturgill v. Ashe Memorial Hosp., Inc.*, 186 N.C. App. 624, 630 (2007).

It has been recognized that the "'duty to exercise due care for the safety of its patients' is

3

independent of [a nursing home's] 'professional' services and does not necessarily implicate a malpractice claim." *Wilkes v. Lee Cnty. Nursing & Rehab. Ctr., LLC*, 1:09CV505, 2010 WL 703111 (M.D.N.C. Feb. 24, 2010) (quoting *Norris v. Rowan Memorial Hops., Inc.*, 21 N.C. App. 623, 626 (1974)). Unlike other cases in which courts have found that an action by an injured nursing home resident sounded in medical malpractice and not ordinary negligence, plaintiff here does not allege that defendant failed to *treat* Ms. Eaton or that defendant failed to provide *special care* for Ms. Eaton while she was a resident at the Brian Center. *See e.g. Littlepaige v. United States*, No. 12-1367, 2013 WL 2501744 *4 (4th Cir. June 12, 2013) (unpublished); *Deal v. Frye Reg'l Med. Ctr, Inc.*, 202 N.C. App. 584 (2010) (unpublished) (medical malpractice action where defendant failed to properly conduct a fall risk assessment that required a nursing diagnosis and clinical judgment). Plaintiff contends only that Ms. Eaton suffered a serious injury, the cause of which is unknown, while in the care of defendant, and that she would not have suffered such injury in the absence of negligence.

Moreover, the Court is persuaded that the failure to keep a dependent, bed-bound nursing home resident from falling out of the bed does not, alone, require the provision of professional services necessitating clinical judgment. A predominately physical or manual activity has been determined not to require specialized skills or knowledge, *Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 629 (2007), and this case "more closely mirrors the cases in which [courts] have held that the actions of the healthcare provider did not" amount to professional services. *Horsley v. Halifax Reg'l Med. Ctr, Inc.*, 725 S.E.2d. 420, 421-22 (N.C.App. 2012) (nurse's failure to offer patient a cane, after being informed that she had trouble standing, not a medical malpractice action); *see also Norris*, 21 N.C. App. 626 (nurse's failure to raise bed side rails not a medical

4

malpractice action); *Lewis v. Setty*, 130 N.C. App. 606, 608 (1998) (injury during removal of

patient from exam table to wheelchair not a medical malpractice action). The Court is further

informed by a recent case from the North Carolina Court of Appeals in which a resident of a Brian

Center, presumedly located in or near Charlotte, North Carolina, filed suit after sustaining injuries

as the result of a fall. That plaintiff, who like Ms. Eaton had suffered a stroke and required

assistance with mobility, was dropped by two nurses or nurses aides while they attempted to move

him from his bed to his shower chair and sustained a spinal cord injury requiring surgery. There,

the court of appeals held that the plaintiff's claim clearly sounded in ordinary negligence rather

than medical malpractice. *Barrett v. SSC Charlotte Operating Co., LLC*, No. COA12-1271, 2013

WL 3422023 (N.C.App. July 2, 2013) (unpublished). Based on the foregoing, the Court finds that

the instant plaintiff has stated a claim for ordinary negligence.

III.    PLAINTIFF HAS PLEADED SUFFICIENTLY UNDER THE DOCTRINE OF RES IPSA LOQUITUR

"Res ipsa loquitur is an evidentiary rule in which a proper factual setting permits a party to

prove the existence of negligence by merely establishing the circumstances of an occurrence that

produces injury or damage." *Snow v. Duke Power Co.*, 297 N.C. 591, 596 (1979). A plaintiff

proceeding under res ipsa loquitur must establish that "direct proof of the cause of an injury is not

available, the instrumentality involved in the accident is under the defendant's control, and the

injury is of a type that does not ordinarily occur in the absence of some negligent act or omission."

*Grigg v. Lester*, 102 N.C. App. 332, 333 (1991). Plaintiff here has pleaded that direct proof of the

cause of Ms. Eaton's injury is not available as nothing appears in her chart documenting any fall

or injury. Plaintiff has pleaded that Ms. Eaton was totally dependent on defendant's staff for

movement, and as such has sufficiently pleaded that the instrumentality involved was under

5

defendant's control. *See Alston v. Granville Health Sys.*, 207 N.C.App. 264, (2010) (unpublished) (pleading that decedent and the gurney from which she fell were under the control of defendant sufficiently alleges instrumentality element of res ipsa). Finally, plaintiff has pleaded that the femur fracture suffered by Ms. Eaton would not have ordinarily occurred in the absence of negligence.

## CONCLUSION

Accordingly, for the reasons discussed above, defendant's second motion to dismiss [DE 12] is DENIED. Defendant's first motion to dismiss [DE 5] is DENIED AS MOOT.

SO ORDERED, this **24** day of October, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

6